UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| COLBY G. SEAGRAM,<br><br>                              Plaintiff,<br><br>   v.<br><br>DAVID'S TOWING & RECOVERY, INC., *et al.*,<br><br>                              Defendants. | Civil Action No. 3:14–CV–414 |

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss ("Motion") (ECF No. 7), pursuant to Federal Rule of Civil Procedure 12(b)(6) and lack of subject matter jurisdiction with respect to Counts 3 and 4. The issues are fully briefed, and neither party sought a hearing. Accordingly, this matter is ripe for disposition. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion. Specifically, the Court DENIES the Motion as to Counts 1 and 2, but GRANTS the Motion as to Counts 3 and 4 and the punitive damages claim.

**I.    FACTUAL BACKGROUND**

Plaintiff, Colby G. Seagram ("Seagram"), is a former employee of Defendant, David's Towing & Recovery, Inc. ("David's Towing"). Defendant Stacey Wilbourne is the owner of David's Towing and his wife, Defendant Marie Wilbourne, is the financial and human resources manager of David's Towing.[1] David's Towing is an entity that provides towing and recovery services.

Seagram worked for David's Towing from approximately April 2012 to April 2014. He was 19 years old when he began working there, and 21 years old when he left. Seagram was

---

[1] Hereinafter, the term "Defendants" is used to collectively refer to all three defendants, David's Towing, Stacey Wilbourne and Marie Wilbourne.

primarily a truck driver, although he performed other services as well. Each day the company dispatcher assigned Seagram vehicles to tow. He drove to the assigned vehicle, loaded it onto the tow truck, secured the vehicle to the truck, and transported the vehicle to the assigned ending destination, which could involve transporting the vehicle to another state.

Seagram was scheduled to work Monday through Friday, 7:00 a.m. to 7:00 p.m. However, he frequently worked longer as many tows involved driving long distances back to the Richmond area after reaching the end destination. In addition, Seagram was scheduled to work every other weekend as the "on call" tow truck driver, which involved Seagram responding to tow assignments all weekend for a 60 hour period (Friday evening at 7:00 p.m. to Monday morning at 7:00 a.m.). Seagram thus worked more than forty hours per workweek–he notes he averaged 75 hours per workweek.

David's Towing did not maintain records of the total number of hours Seagram worked nor did they maintain records regarding the basis on which wages were paid, the regular hourly pay rate, or the total overtime earnings for each workweek. Seagram and David's Towing never had a written agreement for a particular rate of pay. Rather, the "description" of his pay on his paycheck indicated "comm 1."[2]

During the course of his employment Seagram occasionally had to use his own money for certain expenses, including buying fuel for the tow truck. Additionally, Seagram would perform mechanical labor on the truck as necessary.

In early 2014, Seagram asked Stacey Wilbourne for a small personal loan to help cover his phone bill and rent. Mr. Wilbourne gave Seagram $150 cash for the phone bill, and $300 cash for rent. However, Seagram and Mr. Wilbourne never discussed how these loans would be repaid. On April 24, 2014, $200 was deducted from Seagram's paycheck and another $350 was deducted from his May 7, 2014 paycheck. Seagram alleges that these deductions were

---

[2] Defendants argue that because Seagram's paycheck contained no statement of hours and Seagram has failed to allege any hourly rate or salary, there is a reasonable inference that Seagram was paid on a commission basis. (Mot at 1 n.2.)

unauthorized. Furthermore, additional deductions were taken from Seagram's paycheck to cover the costs of the company's uniform that he was required to purchase.

Seagram left his employment in April 2014. David's Towing did not give him his last paycheck. Seagram argues that Defendants' behavior was knowing, willful, wanton, oppressive, and carried out with malice. His Complaint alleges four counts against Defendants. First, Seagram argues that David's Towing paid him less than minimum wage for the hours he worked for the company in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206. Second, he alleges that he was never paid any overtime pay for the hours he worked over forty in a given workweek in violation of 29 U.S.C. § 207. Third, Seagram alleges a claim for quantum meruit, based on the fact that he was not reasonably compensated for his towing and other services. Finally, fourth, Seagram alleges a claim of unjust enrichment on a similar basis.

Seagram requests that the Court enter an award of damages in an amount equal to the unpaid minimum wages and overtime compensation due to him as well as the improper deductions taken from his paychecks. Additionally, Seagram requests liquidated damages in an amount equal to the award of damages under 29 U.S.C. § 216(b). Furthermore, Seagram requests the Court to enter a declaration that Defendants violated his rights under the FLSA. Finally, Seagram requests damages for the unjust enrichment of David's Towing, punitive damages based on his state law claims, and attorney's fees and costs incurred pursuant to 29 U.S.C. § 216(b).

II. **LEGAL STANDARDS**

**A. Dismissal for Failure to State a Claim**

Rule 12 of the Federal Rules of Civil Procedure allows a defendant to raise a number of defenses to a complaint at the pleading stage, including failure to state a claim. A motion to dismiss for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a claim, rather than the facts supporting it. Fed. R. Civ. P. 12(b)(6); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *Republican Party of N.C. v. Martin*, 980 F.2d

943, 952 (4th Cir. 1992). A court ruling on a Rule 12(b)(6) motion must accept all of the factual allegations in the complaint as true, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001), in addition to any provable facts consistent with those allegations, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and must view these facts in the light most favorable to the plaintiff, *Christopher v. Harbury*, 536 U.S. 403, 406 (2002).

To survive a motion to dismiss, a complaint must contain factual allegations sufficient to provide the defendant with "notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8(a)(2) requires the complaint to allege facts showing that the plaintiff's claim is plausible, and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3. In other words, the plaintiff's complaint must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v.* Iqbal, 556 U.S. 662, 678 (2009) (citations omitted). The Court need not accept legal conclusions that are presented as factual allegations, *Twombly*, 550 U.S. at 555, or "unwarranted inferences, unreasonable conclusions, or arguments," *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (citation omitted).

### B. FLSA Standards

The FLSA imposes minimum wage and maximum hour requirements on employers. 29 U.S.C. §§ 206 and 207. Specifically, the FLSA sets a minimum wage requirement of $7.25 an

hour, 29 U.S.C. § 206(a)(1)(C), and requires employers to pay employees time-and-a-half wages for hours worked over forty hours per week. 29 U.S.C. § 207(a)(1).

III. **DISCUSSION**

**A. Counts 1 and 2: Failure to State a Claim under the FLSA**

a. *Parties' Arguments*

Defendants argue that Seagram fails to allege the terms of his compensation agreement with Defendants, fails to allege what compensable time allegedly worked was time which Defendants knew or should have known about, and fails to allege any estimate or approximation of his allegedly unpaid minimum wages or his allegedly unpaid overtime compensation. By only alleging an average of 75 compensable work hours per week, Defendants contend that Seagram has failed to meet his burden of producing sufficient evidence to show the amount and extent of his compensable work as a matter of just and reasonable inference.

In response, Seagram argues that he has pled each of the elements required for an unpaid overtime wages claim, and has also alleged not only his "approximate" wages but rather his actual wages. Finally, Seagram argues that Defendants knew or should have known about his unpaid wages because Defendants assigned him to work 12-hour shifts, and was then assigned to head out on additional towing calls (some long distances from Richmond) up until the end of those shifts.

b. *Analysis*

In Count 1, Seagram alleges a violation of 29 U.S.C. § 206, which entitles employees to minimum wage. To establish a claim for nonpayment of minimum wages under 29 U.S.C. § 206, a plaintiff's complaint must show that: "(1) the plaintiff was employed by the defendant; (2) the plaintiff was engaged in commerce . . .; (3) the plaintiff was not compensated for all hours worked during each work week at a rate equal to or greater than the then applicable minimum wage; and (4) none of the exemptions in 29 U.S.C. § 213 applied to the plaintiff's position." *Portillo v. King of Pita Bakery, Inc.*, No. 1:12-cv-1103, 2013 WL 3479651, at *6 (E.D. Va. July 9,

5

2013). Additionally, the complaint must at least allege approximate wages such that the Defendants will be able to frame a meaningful response. *Walker v. Serv. Corp. Int'l.*, No. 4:10-cv-00048, 2011 WL 1370575, at *7 (W.D. Va. Apr. 12, 2011) ("[A] wage and hour complaint, whether brought under the FLSA or as a breach of contract action, must at least allege approximate wages.").

Based on the *Portillo* standard, Seagram has sufficiently stated a claim for relief. First, Seagram pled that he was employed by David's Towing as a tow truck driver from approximately April 2012 to April 2014. Compl. ¶ 10–11. Second, Seagram pled that he was assigned to tow vehicles from one location to an end destination, which could include another part of Virginia or an adjoining state. *Id.* at ¶ 13. The vehicles he towed sometimes had out-of-state license plates. *Id.* Thus, Seagram was engaged in commerce as a tow truck driver. Third, Seagram pled that he was paid less than minimum wage for the hours he worked. *Id.* at ¶¶ 30, 47. Defendants argue that Seagram failed to allege any estimate or approximation of his allegedly unpaid minimum wages, Mot. at 4; however, Seagram alleged that he worked 75 hours per work week, Compl. ¶ 19, and he attached two earnings statements that list his approximate wages. Compl. Ex. 1. Based on these facts, the Defendants can frame a meaningful response to Seagram's claim of unpaid minimum wages. *Walker*, 2011 WL 1370575, at *7. Finally, fourth, Seagram pled that he was entitled to receive minimum wage under the FLSA, Compl. ¶ 46, and none of the exemptions under 29 U.S.C. § 213(a) apply to his minimum wage claim. Therefore, because Seagram has stated a claim for unpaid minimum wages, the Motion is DENIED with respect to Count 1.

In Count 2, Seagram alleges a violation of 29 U.S.C. § 207, which requires employers to pay overtime compensation to an employee who works more than forty hours per workweek. 29 U.S.C. § 207(a)(1). Generally, to assert a claim for overtime compensation pursuant to 29 U.S.C. § 207, "a plaintiff must plead (1) that he worked overtime hours without compensation; and (2) that the employer knew or should have known that he worked overtime but failed to compensate

him for it." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 667 (D. Md. 2011). However, courts have expressed differing views regarding the level of factual detail required to be pled in an FLSA claim in order to survive a Rule 12(b)(6) motion to dismiss.

In *Butler*, the Maryland District Court adopted a more lenient approach stating,

> There would be little benefit to dismissing this claim and requiring Plaintiffs to amend to provide an estimate of the number of the overtime hours worked. The existing complaint details the types of work activities that occupied Plaintiffs' alleged overtime hours and provides Defendants with sufficient notice of the basis of the allegations to form a response. Thus, Plaintiffs have stated a plausible claim for their entitlement to overtime wages.

*Id.* at 668. In *Rodriguez v. F & B Solutions LLC*, this Court adopted *Butler*'s lenient approach, noting "that a record of the precise number of hours worked is normally in the possession of the employer and as such, can often be obtained through discovery." *Rodriguez v. F & B Solutions LLC*, No. 1:14-cv-00183-GBL-IDD, 2014 WL 2069649, at *2 (E.D. Va. Apr. 29, 2014); *see also Pforr v. Food Lion, Inc.*, 851 F.2d 106, 108 (4th Cir. 1988) ("[A] plaintiff [need not] prove each hour of overtime work with unerring accuracy or certainty."); *Harder v. ARCO Welding, Inc.*, 3:11-cv-396, 2011 WL 5599396, at *3 (E.D. Va. Nov. 17, 2011) (citations omitted) ("To assert a claim for unpaid overtime wages, a plaintiff must properly allege: '(1) that he [or she] worked overtime hours without compensation, (2) the 'amount and extent' of the work 'as a matter of just and reasonable inference,' and (3) that [the employer] knew of the uncompensated overtime.'").

Based on the test described in *Butler*, Seagram has also satisfied the initial requirements for stating a claim for relief for Count 2. First, *Butler* requires that a plaintiff plead that "he worked overtime hours without compensation." *Butler*, 800 F. Supp. 2d at 667. The plaintiff need not plead these hours with exact certainty; rather, approximations are sufficient. Here, Seagram's complaint states that he "averaged 75 hours of work per week for the company during his employment." Compl. ¶ 19. The Complaint also details the activities that occupied his alleged

overtime hours, including additional towing assignments and "on call" weekend work. Thus, Seagram has satisfied this first prong.

Second, *Butler* requires "that the employer knew or should have known that [the plaintiff] worked overtime but failed to compensate him for it." 800 F. Supp. 2d at 667. Seagram alleges that David's Towing scheduled him to work Monday through Friday, 7:00 a.m. to 7:00 p.m. Compl. ¶ 17. In addition to his weekday schedule, David's Towing scheduled him to work every other weekend as the "on call" tow truck driver, which required Seagram to respond to tow assignments all weekend for a 60 hour period. *Id.* at ¶ 18. A company dispatcher was responsible for assigning Seagram vehicles to tow. *Id.* at ¶ 13.

More specifically, Stacey Wilbourne is the "Officer, Director, and President of David's Towing & Recovery" and is "deeply involved in its day-to-day operations." *Id.* at ¶ 5. Marie Wilbourne is described as the "human resources manager" and is responsible for "human resources documentation, employer policies, and employee pay and leaves of absence." *Id.* at ¶ 6. A reasonable inference exists that, based on their managerial positions, Mr. and Mrs. Wilbourne knew or should have known about Seagram's assigned overtime schedule. Additionally, although David's Towing did not maintain records of Seagram's total hours, as a corporate employer, it also should have known of Seagram's overtime work. For those reasons, Seagram has sufficiently stated a claim for overtime compensation and thus the Motion is DENIED as to Count 2.

**B. Count 2: Failure to State a Claim of Unpaid Overtime Compensation because of the "Motor Carrier Act" Exemption**

   a. ***Parties' Arguments***

Defendants argue that Seagram has failed to state a claim for unpaid overtime compensation under the FLSA because Seagram was exempt from such compensation pursuant

to the "Motor Carrier Act" exemption set forth in 29 U.S.C. § 213(b)(1).[3] In response, Seagram argues that the "Motor Carrier Act" exemption does not apply to David's Towing because the company's interstate activities were negligible, or legally *de minimis*. Seagram believes that this issue cannot be decided on a motion to dismiss and it cannot be decided on the record as a matter of law. Rather, David's Towing bears the burden of presenting "hard numbers" about the extent of its interstate business and revenue.

Furthermore, Seagram argues that when considering the application of the *de minimis* exception, the Court should also consider whether the carrier acquired the appropriate federal licensing to operate in interstate transportation and whether it held itself out as an interstate carrier. *See Brennan v. Schwerman Trucking Co. of Va., Inc.*, 540 F.2d 1200, 1204 (4th Cir. 1976). David's Towing does not have authorization as an interstate carrier. The company is not registered with the Federal Motor Carrier Safety Administration and does not have a U.S. Department of Transportation number. Thus, by not registering as a common carrier in interstate commerce, David's Towing held itself out as not being an interstate motor carrier.

b. ***Analysis***

The overtime requirement of the FLSA does not apply to all employees as exemptions may be applicable. 29 U.S.C. § 213(b). One such exemption is the "Motor Carrier Act." 29 U.S.C. § 213(b)(1). Under this Act, the overtime requirements of the FLSA do not apply to any employee to whom the Secretary of Transportation (previously, the Interstate Commerce Commission) "has [the] power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of title 49." *Id.* The Secretary of Transportation can prescribe the requirements for "maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. § 31502(b)(1). A motor carrier is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. §

---

[3] Defendants also contend that Seagram is exempt from the overtime requirements of the FLSA pursuant to the commission paid exemption. 29 U.S.C. § 207(i). However, establishing the basis for the claim would require facts not contained within the Complaint and therefore the issue is not presently before this Court. (*See* Mot. at 8 n.4.)

13102(14). This section applies to transportation in interstate commerce, which includes transportation between at least two states. *See* 49 U.S.C. § 13501(1)(A). The Fourth Circuit has held that in determining whether the Motor Carrier Act exemption applies, the Court must consider both whether the employee's duties affect the safety of operation of motor vehicles in transportation on public highways and whether that transportation involves interstate commerce. *See Troutt v. Stavola Bros., Inc.*, 107 F.3d 1104, 1107–1109 (4th Cir. 1997).

However, the Court must also consider the "*de minimis*" exception to the Motor Carrier Act exemption. *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708 (1947). In *Morris v. McComb*, 332 U.S. 422 (1947), the Supreme Court decided whether the Interstate Commerce Commission has the power, under the Motor Carrier Act, to establish qualifications and maximum hours of service with respect to drivers and mechanics employed by a common carrier, when the services rendered through such employees in interstate commerce constituted only 3% to 4% of the carrier's total carrier services. *Id.* at 423. The Supreme Court noted that "it is 'the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for the Commission's power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment.'" *Id.* at 431–32. The Court concluded that the petitioner's interstate commerce trips were a "natural, integral and apparently inseparable part of the common carrier service . . . ." *Id.* at 433. Thus, the Court held that the Commission had the requisite power to establish qualifications and maximum hours of service pursuant to the Motor Carrier Act. *Id.* at 434.

On the other hand, the Fourth Circuit has noted that the *de minimis* exception would apply in situations when "an employee's activities directly related to the safety of interstate vehicles were trivial in relation to his overall duties." *Blankenship v. Thurston Motor Lines, Inc.*, 415 F.2d 1193, 1196 (4th Cir. 1969).

With this in mind, the Court must consider whether the employee's duties affected the safety of operation of motor vehicles in transportation on public highways and whether that transportation involved interstate commerce. *See Troutt*, 107 F.3d at 1107–1109. Here, the parties do not apparently dispute either of these elements. Rather the dispute lies as to whether that transportation involved sufficient interstate commerce or whether instead his involvement was only *de minimis*. However, for purposes of this Motion to Dismiss, the Court cannot as a matter of law declare whether or not the Motor Carrier Act exemption applies. For that reason, the Motion as to Count 2 is DENIED.

### C. Counts 3 and 4: Plaintiff's State Law Claims

#### a. *Parties' Arguments*

Defendants argue that Counts 3 and 4 are preempted by the FLSA. Defendants allege that Seagram's state law claims are simply an attempt to restate his unpaid wage claims. Seagram, on the other hand, contends that these state law claims assert "more and different wrongs" that are not covered by the FLSA.

#### b. *Analysis*

In Count 3 Seagram alleges a claim of quantum meruit and in Count 4 he alleges a claim of unjust enrichment. Virginia courts interchangeably use the terms "quantum meruit" and "unjust enrichment." Although each term is technically a distinct cause of action, the desired result of both is the same–that the plaintiff who provided a benefit or service to the defendant receives compensation for that benefit or service.

Quantum meruit recovery "is based upon an implied [in fact] contract to pay the reasonable value of services rendered." *Mongold v. Woods*, 278 Va. 196, 203 (Va. 2009) (citing *Hendrickson v. Meredith*, 161 Va. 193, 198 (1933)). An implied in fact contract is one implied from the conduct of the parties. *Hendrickson*, 161 Va. at 200. Thus, where a contract has been formed based on the parties' conduct, but nothing has been said regarding compensation, the law provides that the person who performs the services shall be paid for the reasonable value of

the work performed. *Mongold*, 278 Va. at 203 (citation omitted). However, the benefiting party must have requested and accepted the services rendered; "[m]erely rendering services alone does not create a contract implied-in-law." *Appleton v. Bondurant & Appleton, P.C.*, 67 Va. Cir. 95, at *6 (Va. Cir. Ct. 2005) (citation omitted).

On the other hand, unjust enrichment is based on a contract implied in law. *Po River Water and Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 255 Va. 108, 114 (Va. 1998). This theory is based on the principle that a person should not be allowed to retain a benefit imposed upon him without paying for the services rendered. *See Whitehurst v. Cho*, No. 92231, 1992 WL 884510, at *1 (Va. Cir. Ct. Feb. 19, 1992) (citing *Kern v. Freed Co.*, 224 Va. 678, 680–81 (1983)). Thus, regardless of any independent agreement or presumed intention, the court may still imply a liability to pay. *Po River Water and Sewer Co.*, 255 Va. at 114.

Both a claim for quantum meruit and unjust enrichment require the plaintiff to allege that: "(1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit and reasonably should have expected to pay for it; and (3) the defendant accepted or retained the benefit without paying for its value." *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (Va. 2008).

Although not expressly stated in the Act, courts have held that state law claims will "be preempted by the FLSA where those claims have merely duplicated FLSA claims." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007). A Rule 12(b)(6) motion to dismiss is a proper vehicle by which a court may consider a preemption claim. *Walker*, 2011 WL 1370575, at *3.

In this case, the FLSA directly addresses and provides relief for Seagram's allegation that David's Towing did not pay him reasonable compensation for his towing and other services. Compl. ¶¶ 69, 75. Seagram is attempting to assert a claim for unpaid wages, which clearly falls within the FLSA's exclusive remedies. Seagram "cannot circumvent the exclusive remedy prescribed by Congress by asserting equivalent state law claims in addition to the FLSA claim."

12

*Nettles v. Techplan Corp.*, 704 F. Supp. 95, 100 (D.S.C. 1988). For that reason, the Motion is GRANTED with respect to Counts 3 and 4.

### D. Punitive Damages Claim

#### a. *Parties' Arguments*

Defendants argue that (1) quantum meruit is a contractual cause of action for which punitive damages are not available and (2) Seagram has failed to allege facts that would demonstrate any willful, wanton or malicious acts that would support an award of such damages. Seagram in response argues that "logic dictates" that Defendants' behavior toward him was knowing, willful, wanton, oppressive, and carried out with malice. Seagram alleges that David's Towing actually committed conversion by wrongfully depriving Seagram of the money owed to him. Seagram and Mr. Wilbourne never had an agreement as to repayment and thus Mr. Wilbourne had no legal right to Seagram's money. By pleading the tort of conversion, Seagram argues that is entitled to punitive damages.

#### b. *Analysis*

Punitive damages may be awarded in tort actions when the Court deems it appropriate to punish the wrongdoer and deter similar conduct. *See Kamlar Corp. v. Haley*, 224 Va. 699, 706 (Va. 1983). In contrast, in contract actions damages are intended to compensate the plaintiff. *Id.* Damages "are limited to those losses which are reasonably foreseeable when the contract is made." *Id.* The majority of courts have refused to grant an award of punitive damages for a simple breach of contract action. *Id.* Only when the plaintiff has provided evidence of "an independent, willful tort" will the court consider awarding punitive damages. *Id.* at 707.

Seagram is not entitled to punitive damages on his state law claims as both quantum meruit and unjust enrichment rely on a contractual theory. *See Mongold*, 278 Va. at 203; *Po River Water and Sewer Co.*, 255 Va. at 114. Furthermore, damages for the alleged state law claims are limited to the "reasonable value of services rendered." *Mongold*, 278 Va. at 203.

In his opposition brief Seagram attempts to argue that his Complaint actually pled a tort of conversion. Thus, he appears to concede that punitive damages are not permitted for his alleged state law claims as he instead attempts to argue his claim under a theory of conversion. However, Seagram's argument on the basis of conversion also fails. Although Seagram alleges that "logic dictates" that Mr. Wilbourne's actions were "knowing, willful and with malice," Pl.'s Opp'n to Defs.' Mot. to Dismiss 11, he provides no factual basis for his claims. Therefore, the Motion is GRANTED with respect to the punitive damages claim.

### IV. CONCLUSION

For the foregoing reasons, the Motion is GRANTED IN PART and DENIED IN PART. Specifically, the Court DENIES the Motion as to Counts 1 and 2, but GRANTS the Motion as to Counts 3 and 4 and the punitive damages claim.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order will issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __17th__ day of October 2014.